IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| ROHAN WALI, and SONAJA TAMBEKAR, <br><br> Plaintiffs, <br><br> vs. <br><br> U.S. CITIZENSHIP AND IMMIGRATION SERVICES, and LOREN K. MILLER, in their official capacity as Director of the Nebraska Service Center; <br><br> Defendants. | 4:21-CV-3288 <br><br> MEMORANDUM AND ORDER |

## I. INTRODUCTION

This case comes before the Court on Plaintiffs' Motion for Temporary Restraining Order.[1] Filing 3. For the reasons stated herein, the Court denies the Motion for Temporary Restraining Order.

## II. BACKGROUND

Plaintiff Rohan Wali is an applicant for employment-based adjustment of status to that of lawful permanent resident. Filing 1 at 4. Plaintiff Sonaja Tambekar is Wali's spouse and a derivative of his application for adjustment of status. Filing 1 at 5. Defendant United States Citizenship and Immigration Services ("USCIS") is the agency within the Department of Homeland Security responsible for adjudicating applications for adjustment of status, known as I-485 applications. Filing 1 at 5. Defendant Loren K. Miller is the Director of USCIS's Nebraska Service Center, the location responsible for adjudicating Plaintiffs' applications. Filing 1 at 5.

---

[1] The Court previously ordered the parties to submit briefing regarding whether it has subject-matter jurisdiction over this case. Filing 10 at 3. In response, Defendants filed a Motion to Dismiss based, in part, on a lack of subject-matter jurisdiction. Filing 16. The Court will allow Plaintiffs to respond to Defendants' Motion to Dismiss before ruling on it.

1

For the category of employment-based green cards at issue in this case, Congress has allotted 140,000 visas per fiscal year plus any unused visas from the family-based visa category from the preceding fiscal year. 8 U.S.C. § 1151(d). There are also per-country limits on visa availability. *See* 8 U.S.C. § 1152. At the end of fiscal year 2020, fewer family-based visas were used than allotted by statute and thus, in fiscal year 2021, there were additional visa numbers available in the employment-based category under this "rollover" scheme. Filing 1 at 9-10. As a result of this rollover, in September 2020, the Department of State announced that it would be advancing the "priority dates" in its Visa Bulletin to allow for more Chinese and Indian employment-based immigration applications to be processed. Filing 1 at 10. This meant that applicants like Plaintiffs could apply if they had priority dates before January 1, 2014. Filing 1 at 12. Because Wali has a priority date before this date (June 28, 2013), he submitted his application on October 15, 2020. Filing 1 at 4-5.

On October 14, 2021, the Department of State published an updated Visa Bulletin for November 2021. Filing 1 at 12. It indicates that, starting November 1, the priority date for applicants in Wali's category will retrogress to January 15, 2012. Filing 1 at 12. This means Wali's priority date will no longer be current and USCIS will no longer be able to approve his application for adjustment of status. Filing 1 at 12-13.

On October 19, 2021, Plaintiffs filed the present case. Filing 1. They assert claims of unreasonable delay and arbitrary and capricious action under the Administrative Procedure Act, 5 U.S.C. § 706(2)(A), and the Mandamus Act, 28 U.S.C. § 1361. Filing 1 at 17-20. They seek a writ of mandamus compelling Defendants to adjudicate their I-485 applications before November 1, 2021; a judgment declaring Defendants have unreasonably delayed their I-485 applications; alternative relief "such as ordering USCIS to 'hold' a visa number" for them beyond November 1;

and attorney fees and costs. Filing 1 at 20. The same day they filed their Complaint, Plaintiffs also filed a Motion for Temporary Restraining Order, Filing 3. They seek immediate injunctive relief under the All Writs Act, 28 U.S.C. § 1651(a), preserving the Court's jurisdiction over this matter after November 1, 2021. Filing 3 at 2.

On October 21, 2021, the Court ordered Plaintiffs to immediately serve Defendants and provide them with notice of the Motion for Temporary Restraining Order. Filing 10 at 3. The Court also expressed its concern that it may lack subject-matter jurisdiction over this case and thus ordered the parties to submit briefing addressing this question. Filing 10 at 2-3. Plaintiffs filed their brief regarding subject-matter jurisdiction on October 25, asserting the Court has authority over unreasonable agency delays in adjudicating adjustment applications. Filing 15. On October 27, 2021, Defendants filed a Motion to Dismiss based on a lack of subject-matter jurisdiction, a lack of standing, and a failure to state a claim upon which relief can be granted. Filing 16. Plaintiffs replied in support of their Motion for Temporary Restraining Order on October 28, 2021. Filing 19.

### III. ANALYSIS

Plaintiffs seek a temporary restraining order "in order to preserve the Court's ability to redress Plaintiff's claims" and "order[ing] Defendant's [sic] to reserve a current visa number to allow for Plaintiff to adjust to permanent resident status even following the coming November 1, 2021 visa bulletin retrogression if Plaintiff ultimately prevails on claims brought before this Court." Filing 3-1 at 6.

In deciding a motion for a preliminary injunctive relief, the court must consider "(1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that

3

movant will succeed on the merits; and (4) the public interest." *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981). The same factors apply in determining whether to issue a temporary restraining order. *Baker Elec. Co-op., Inc. v. Chaske*, 28 F.3d 1466, 1472 (8th Cir. 1994). The burden of establishing the propriety of issuing a temporary restraining order is on the movant. *Id.* "No single factor is determinative." *WWP, Inc. v. Wounded Warriors, Inc.*, 566 F. Supp. 2d 970, 974 (D. Neb. 2008). The Court will address each of the *Dataphase* factors in turn.

### A. Likelihood of Success on the Merits

Turning to the first of the *Dataphase* factors, Plaintiffs have not shown a likelihood they will succeed on the merits of their claims.

"In deciding whether to grant a preliminary injunction, likelihood of success on the merits is most significant." *S.J.W. ex rel. Wilson v. Lee's Summit R-7 Sch. Dist.*, 696 F.3d 771, 776 (8th Cir. 2012) (internal quotation marks omitted) (quoting *Minn. Ass'n of Nurse Anesthetists v. Unity Hosp.*, 59 F.3d 80, 83 (8th Cir. 1995)). A movant need not prove it is more likely than not to prevail, but "need only show a reasonable probability of success, that is, a 'fair chance of prevailing'" on the merits. *Kroupa v. Nielsen*, 731 F.3d 813, 818 (8th Cir. 2013) (quoting *Planned Parenthood Minn., N.D., S.D. v. Rounds*, 530 F.3d 724, 732 (8th Cir. 2008) (en banc)).

Plaintiffs frame their case as one of unreasonable delay in adjudicating their pending adjustment-of-status applications. *See* Filing 1 at 13-18. The Court notes that there is no consensus within this district as to whether courts have jurisdiction over cases alleging adjudication of an adjustment application has been unreasonably delayed. On the one hand, Congress has given the Attorney General absolute authority over the decision of whether to grant or deny an adjustment application. 8 U.S.C. § 1255(a) (stating that the Attorney General "may" adjust the status of an alien to that of lawful permanent resident "*in his discretion* and under such regulations as he may

prescribe" (emphasis added)). Courts cannot review discretionary agency decisions. 5 U.S.C. § 701(a) (stating that under the Administrative Procedure Act, judicial review is unavailable when "agency action is committed to agency discretion by law"); *see also Ting Hao Yang v. Gonzalez*, No. 4:06CV3290, 2007 WL 1847302, at *1 (D. Neb. June 25, 2007) ("I am of the firm opinion that the amount of time the USCIS takes to make a decision [on an adjustment application] is also completely discretionary . . . ."). On the other hand, the statute does not permit the attorney general to render *no* decision on a pending adjustment application and thus other judges have found jurisdiction over unreasonable-delay cases on the premise that the Attorney General's duty to adjudicate adjustment applications is nondiscretionary even if he or she has discretion over the ultimate outcome. *See Irshad v. Napolitano*, No. 8:12CV173, 2012 WL 4593391, at *5 (D. Neb. Oct. 2, 2012), *aff'd sub nom. Irshad v. Johnson*, 754 F.3d 604 (8th Cir. 2014) (finding jurisdiction over case of unreasonable delay in adjudicating adjustment-of-status application); *Ansari v. U.S. Citizenship & Immigr. Servs.*, No. 8:07CV160, 2007 WL 4553920, at *4 (D. Neb. Dec. 18, 2007) ("The statute requires a decision and this court has jurisdiction to review that inaction. Accordingly, the court finds it has jurisdiction over this case."). However, even assuming this is a case of unreasonable delay and even assuming the Court has jurisdiction to decide such a case, Plaintiffs are still not likely to prevail on the merits.

In assessing the reasonableness of a delay in adjudicating an adjustment-of-status application, courts apply the factors set forth in *Telecommunications Research & Action Center v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984) ("*TRAC*"). *See Irshad v. Johnson*, 754 F.3d 604, 607 (8th Cir. 2014) (applying the *TRAC* factors "to evaluate the reasonableness of delay"). The nonexhaustive list includes the following considerations:

> (1) the time agencies take to make decisions must be governed by a "rule of reason";
> (2) where Congress has provided a timetable or other indication of the speed with

>which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*TRAC*, 750 F.2d at 79-80 (internal quotation marks and citations omitted).

Applying these factors, Plaintiffs have not shown that any delay in processing their application is unreasonable. They argue that USCIS's "first-in/first-out" rule of reason for processing applications fails because "USCIS does not follow this rule in any strict sense." Filing 1 at 15. But Plaintiffs provide no evidentiary support for this contention, *see* Filing 1 at 15, nor do they explain how the potential existence of exceptions to this rule render it unreasonable. Plaintiffs further argue that "Congress has also made clear that it expects USCIS to adjudicate applications for permanent residency . . . within 180 days." Filing 1 at 15. But for this proposition, Plaintiffs point the Court to 8 U.S.C. § 1571(b) which states, "It is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application . . . ." Filing 1 at 16. This "sense of Congress" is an aspirational standard and the Court thus declines to impose it as a hard deadline. *Accord Kurakula v. Renaud*, No. 4:20-CV-3131, 2021 WL 308189, at *4 (D. Neb. Jan. 29, 2021) (discussing § 1571(b) and stating "the Court will not transform a precatory guideline into a mandatory deadline"). Finally, while Plaintiffs have adequately alleged a human-welfare interest at stake, Filing 19 at 15-16, they do not adequately dispel any concerns about the effect of expediting their action on other agency activities. In particular, Plaintiffs do not explain why their adjustment applications should be adjudicated more quickly than other visa applicants'. Requiring USCIS to address Plaintiffs' applications before other immigrants' applications would essentially result in a judicial reordering

of USCIS's priorities. The Court is hard-pressed to believe such a drastic intervention is appropriate or permissible based solely upon two applicants' desire to see their applications adjudicated more quickly.

Finally, even if Plaintiffs were able to show an unreasonable delay in this case, it is not apparent the Court can do what they ask. Unlike a typical unreasonable-delay case in which a plaintiff seeks an order requiring USCIS render a decision on his or her application promptly, *see, e.g.*, *Al Kurdy v. U.S. citizenship & Immigr. Servs.*, No. 8:07CV225, 2008 WL 151277, at *4 (D. Neb. Jan. 10, 2008) ("The plaintiffs are seeking an order asking this court to require the defendants to make a final decision on their applications for adjustment of their status."), Plaintiffs here want the Court to "order[] USCIS to 'hold' a visa number for Plaintiff beyond the scheduled November 1, 2021 retrogression to allow adjudication of Plaintiff's application after October 31, 2021 notwithstanding the retrogression." Filing 1 at 20. The Court questions whether it can require USCIS to "reserve" or "hold" a visa number beyond the date it would otherwise be available or if USCIS even has the ability to do so if it were so ordered. *Cf. Laud v. U.S. Citizenship & Immigr. Servs.*, No. 4:21-CV-3235, 2021 WL 4553273, at *9 (D. Neb. Oct. 5, 2021) (concluding, based on the statutory scheme allocating visas, that "'[r]eserving' an unused visa for an applicant past the end of the fiscal year would, in fact, be unlawful."). *But see Gomez v. Trump*, 490 F. Supp. 3d 276, 286 (D.D.C. 2020), *appeal dismissed*, No. 20-5332, 2020 WL 7688214 (D.C. Cir. Dec. 14, 2020) ("In sum, because the fiscal year has not yet passed, the court plainly has the equitable authority and discretion to order Defendants to reserve visas for future processing pending a final resolution of the merits."). Even if the Court were to find it had the authority to order USCIS to hold or reserve visas, it still finds Plaintiffs have failed to show such a remedy is warranted in this case.

For all these reasons, Plaintiffs have failed to show a likelihood of success on the merits and this factor weighs against the issuance of the temporary restraining order they seek.

### B. Threat of Irreparable Harm

Under the next *Dataphase* factor, the movant must "demonstrate that irreparable [harm] is *likely* in the absence of an injunction." *Sierra Club v. U.S. Army Corps of Eng'rs*, 645 F.3d 978, 992 (8th Cir. 2011) (emphasis in original) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22, 192 S. Ct. 365, 172 L. Ed. 2d 249 (2008). "[I]rreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." *Grasso Enters., LLC v. Express Scripts, Inc.*, 809 F.3d 1033, 1040 (8th Cir. 2016) (quoting *Gen. Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 319 (8th Cir. 2009)).

Here, Plaintiffs cannot show irreparable harm. Importantly, they do not and cannot allege that their adjustment applications will ultimately be successful. As set forth above, the discretion to grant or deny an application for adjustment of status lies squarely with the Attorney General. 8 U.S.C. § 1255(a). Thus, even if the Court were to grant the injunctive relief Plaintiffs seek, it is not clear such an action would benefit them or result in them receiving their green cards. Stated another way, Plaintiffs cannot assert *irreparable* harm where any such harm is speculative to begin with. *Packard Elevator v. I.C.C.*, 782 F.2d 112, 115 (8th Cir. 1986) ("[T]he injury must be both certain and great; it must be actual and not theoretical."). To the extent Plaintiffs argue that the harm results from not having their applications adjudicated immediately rather than from not having them granted, they have also failed to show irreparability. Even if the retrogression means USCIS will not decide Plaintiffs' applications now but rather at some later date, this means only that the decision is delayed, not that their applications are irreparably or permanently prejudiced. Accordingly, this factor weighs against the issuance of injunctive relief.

### C.  Balance of Injury to the Parties

When issuing a temporary restraining order, courts must assess whether the "balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." *Dataphase*, 640 F.2d at 113. To determine the harms that must be weighed, the Eighth Circuit has looked at the threat to each of the parties' rights that would result from granting or denying the injunction. *Baker Elec.*, 28 F.3d at 1473. A court also must consider the potential economic harm to each of the parties and to interested third parties. *Id.*

Any harm to Plaintiffs is speculative and it is thus difficult to say court intervention would be required, regardless of the potential harm to Defendants. Furthermore, Plaintiffs do not seek to maintain the status quo; they want the Court to order USCIS to treat them *preferentially* as compared to other visa applicants by reserving them a spot ahead of others in line once the Visa Bulletin retrogression occurs. The balance of harms thus weighs against issuing the temporary restraining order.

### D.  Public Interest

Lastly, the Court concludes that the public interest weighs heavily against the issuance of a temporary restraining order. As set forth above, Plaintiffs essentially seek an order requiring USCIS to let them "jump the line" and receive more favorable treatment of their adjustment applications than other similarly situated applicants. While the Visa Bulletin retrogression is undoubtedly undesirable for Plaintiffs, it is hard to say the public interest is served by according preferential treatment to Plaintiffs and ordering USCIS to provide them visas that would otherwise go to other potential immigrants. Absent a showing that these plaintiffs warrant special treatment

over other immigrants, the public's interest is in the orderly adjudication of adjustment applications, not court intervention promoting Plaintiffs' applications over others.[2]

## IV. CONCLUSION

For the reasons set forth herein, the Court denies Plaintiffs' Motion for a Temporary Restraining Order. Accordingly,

IT IS ORDERED:

1. Plaintiffs' Motion for Temporary Restraining Order, Filing 3, is denied.

Dated this 29th day of October, 2021.

BY THE COURT:

Brian C. Buescher
United States District Judge

---

[2] In their Reply Brief, Plaintiffs attempt to remedy this problem by arguing "USCIS can and should adjudicate ALL pending EB-3 India applications this quarter." Filing 19 at 3. Aside from the obvious issue of standing to assert other applicant's interests, Plaintiffs' blanket argument ignores how the public interest would be affected by prioritizing all employment-based Indian immigrants' applications over other (family- or employment-based) applicants from other countries. The same issue remains that Plaintiffs have not shown a good reason why their application, or all Indian employment-based applications, should be treated preferentially.